der any rule, however summary the proceeding.

[3] This court, in Ex parte Tayohichi Yamada, 300 Fed. 248 at page 249, said: "Section 19 deals with two classes of aliens: The first is those who have no right to enter; the second class, those whose admission was lawful, but whose subsequent conduct forfeited the right to remain. The five-year limitation of the first class began at the date of entry, and the five-year limitation period of the second class began at the time of the commission of, or conviction of, the inhibited crime."

[4] Petitioner clearly could not be deported for disqualification at the time of entry, even if competent proof was presented, because not inaugurated within the limited period. On November 5, 1921, she became the lawful wife of a native-born citizen, and therefore a citizen of the United States. The Circuit Court of Appeals of this circuit in Hopkins v. Fachant, 130 Fed. 839, 65 C. C. A. 1, says: "The rule is well settled that her marriage to a naturalized citizen of the United States entitled her to be discharged. The status of the wife follows that of her husband. * * * "

This court, in Ex parte Grayson, 215 Fed. 419, held that the class in section 1994, R. S. (Comp. St. § 3948), providing that any woman thereafter married to a citizen of the United States, who "might herself be lawfully naturalized, shall be deemed a citizen," referred to the races, classes, or nations which were excluded from citizenship, and not to personal disqualifications. The petitioner does not belong to the excluded classes. Upon her marriage to McMahon she became a citizen. She was married before her arrest, before the commission of the act charged, and clearly is not subject to deportation upon the facts presented. She did not have a fair trial.

The writ is granted.

---

## In re TATE.

(District Court, W. D. Pennsylvania. September, 1924.)

No. 1155.

Aliens ⚖➡69 — Citizens ⚖➡9 — Certificate of naturalization not granted to petitioner, who became citizen by naturalization of father while petitioner was minor.

Under Act June 29, 1906, § 4 (Comp. St. § 4352), certificate of citizenship will not be granted to son of alien, who became citizen while son was minor, where son has resided within the United States from period antedating arrival at age of 21 years to the date of the petition, since such son is already a citizen, in view of section 28 (Comp. St. § 4383).

In Equity. Petition by David Tate for certificate of citizenship. Denied.

GIBSON, District Judge. Under the above title, David Tate, of Hammond, Ind., has filed in this court a petition, verified by affidavit, wherein he prays the court that he be granted a certificate of citizenship in his own name, "in accordance with the intendment and terms of the act of Congress approved June 29, 1906, 34 Stat. p. 596." In his petition David Tate alleges that his father, Samuel John Tate, was naturalized by this court on December 8, 1919, and granted certificate No. 998723; that petitioner was a minor, and resided in the Western district of Pennsylvania, at the time his father was naturalized, and has never expatriated himself, "either through an oath of allegiance to, or by naturalization in, a foreign state, or through residence abroad, or by marriage." Petitioner further alleges that he desires to take the oath of allegiance in open court, and also has attached to the petition a written oath of allegiance, attested by the clerk of the superior court of Lake county, Ind.

If the petition be regarded as an application for the naturalization of David Tate, the petitioner, the order prayed would not only not be "in accordance with the intendment of the act of Congress approved June 29, 1906," but would be directly opposed to the provisions of such act, by section 4 (34 Stat. p. 596 [Comp. St. § 4352]) of which it is provided: "That an alien may be admitted to become a citizen of the United States in the following manner and not otherwise." Section 4 then proceeds to prescribe the conditions under which an alien may be admitted, among which the method herein attempted by petitioner is not mentioned. Not to set out all the deficiencies of the petition in this regard, the petitioner is ineligible for naturalization by reason of the fact that he is a resident of the state of Indiana, not of the Western district of Pennsylvania.

But, while the petitioner has specifically asked the court for a certificate of citizenship in his own name, what he actually seeks is not naturalization, but a paper that would conclusively establish as a fact that he is the son of an alien, who became a citizen while petitioner was a minor, and that the petitioner has resided within the United States from a period antedating his arrival at the age of 21 years to the date of the petition. He is already a citizen and needs no authority to exercise his rights as such.

There is no need to ask the court to grant him that which he already possesses. He may desire conclusive evidence of his citizenship, but to gratify his desire the court cannot give him a certificate which does not reflect the actual facts. He seeks a paper which would declare that he had been an alien naturalized on the date of the certificate. To obtain that certificate, he must pursue the regular course required of all aliens seeking naturalization. He cannot rely upon his father's naturalization, and get a paper which indicates that citizenship was conferred directly upon himself.

No statute, known to us, has conferred upon this court the power to issue a certificate of citizenship to one who claims citizenship by virtue of the naturalization of his father while he was a minor. The act of 1906 does not give it, as we view it, either directly or indirectly. The burden placed upon the court by the assumption of such power by means of a forced interpretation of the act, if nothing else, would prevent us from assuming it, even though it might relieve from embarrassment those who claim citizenship through the father's naturalization.

As a matter of fact, no insuperable obstacle prevents such a claimant from establishing his rights as a citizen before the tribunal wherein those rights may be questioned. Section 28 of the Act of June 29, 1906 (Comp. St. § 4383), provides: " * * * Certified copies of all papers, documents, certificates, and records required to be used, filed, recorded, or kept under any and all of the provisions of this act shall be admitted in evidence equally with the originals in any and all proceedings under this act and in all cases in which the originals thereof might be admissible as evidence."

If petitioner will provide himself with a duly certified copy of the record of his father's naturalization, his burden before any other tribunal would be no greater than it would be in this court in the proof of the essential declarations of his present petition.

The petition must be denied.

---

## GOULD v. NATHANS et al.

(District Court, D. Massachusetts. Jan. 14, 1924.)

No. 1798.

**1. Bankruptcy ⟨key⟩184(1)—Transaction held to constitute valid pledge, not subject to attack by pledgor's trustee in bankruptcy.**

Where corporation, as security for loan, assigned certain beds in storeroom, of which assignee was given key, and beds were delivered only with assignee's consent, she had a valid pledge of the beds as security for her loan, and her sale of them after filing of petition in bankruptcy cannot be attacked by corporation's trustee in bankruptcy.

**2. Bankruptcy ⟨key⟩166(3)—Trustee held entitled to accounts receivable and proceeds assigned to creditor pursuant to prior agreement.**

Where corporation agreed to assign accounts receivable as security for loan, but they were not delivered to creditor until shortly before bankruptcy, when she knew that the company was insolvent, corporation's trustee in bankruptcy was entitled to accounts and the proceeds, though delivered to creditor pursuant to prior agreement to assign them.

**3. Bankruptcy ⟨key⟩168—Rule as to allowance of interest on preferential payment stated.**

Interest on preferential payment recovered by trustee will ordinarily be allowed only from date of demand, but in case of fraud should be allowed from date of receipt of money.

In Equity. Bill by Alexander G. Gould, trustee, against Mary Nathans and others. Decree for complainant.

Thomas M. Vinson, of Boston, Mass., for plaintiff.

Bernard Ginsburg, of Boston, Mass., for defendants.

LOWELL, District Judge. This is a bill in equity, brought by the trustee in bankruptcy of the New England Metallic Bed Company, praying for a decree that a certain agreement between the bankrupt and the defendants be held to be an agreement for partnership. The bill also prays for an accounting. The material facts are as follows:

On August 24, 1921, the bankrupt and the defendants entered into an agreement of an ambiguous character, which might be considered either to be an attempt at a partnership arrangement or an instrument relating to a loan of money. In the view which the court takes of the transaction it is not necessary to describe in detail the agreement. Its salient features were that Mary Nathans was to pay $3,000 and that the defendant was to issue 30 shares of stock to Isaac Nathans. Mary Nathans paid the money, and afterward made a further payment of $1,000. As security for the money, the company assigned to her 50 beds in a storeroom and $10,000 of capital stock, on which she was to have no voting rights. A further arrangement was made, and it is this feature of the agreement which presents the important question in the case, that all the accounts receivable were to be assigned to Mary Nathans, but that the company was to collect them, and she was not to inform any creditor of the assignment.